# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEIDRE Y. KELLY<br>3352 Anaconda Drive<br>Cincinnati, OH 45211<br><br>Plaintiff,<br><br>v.<br><br>ERIC UELAND, Acting Administrator,<br>U.S. AGENCY for INTERNATIONAL DEVELOPMENT<br>1300 Pennsylvania Avenue NW<br>Washington, DC 20523<br><br>and<br><br>U.S. AGENCY for INTERNATIONAL DEVELOPMENT OFFICE OF INSPECTOR GENERAL<br>1300 Pennsylvania Avenue NW<br>Washington, DC 20523<br><br>Defendants. | Civil Action No.: ______________<br><br>(Judge ______________________)<br><br>Case: 1:26–cv–01929<br>Assigned To : Unassigned<br>Assign. Date : 5/28/2026<br>Description:FOIA/Privacy (I-DECK)<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER THE FREEDOM OF INFORMATION ACT, 5, U.S.C. AND THE PRIVACY ACT, 5 U.S.C. § 552A** |

## I. PRELIMINARY STATEMENT

1. Plaintiff Deidre Y. Kelly ("Plaintiff"), proceeding *pro se*, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, to compel Defendant Office of Inspector General of the United States Agency for International Development ("USAID-OIG" or "Defendant") to conduct an adequate search for, and produce, records responsive to Plaintiff's FOIA/Privacy Act request. Plaintiff is a former Paralegal Specialist (FOIA) at USAID-OIG and possesses



RECEIVED
MAY 28 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

direct, first-hand knowledge of the agency's records systems, custodial practices, and FOIA processing procedures.

2. On December 18, 2025, Plaintiff submitted her initial FOIA/Privacy Act Request No. OIG-F-00002-26 ("the Request") to USAID-OIG, seeking records related to her employment with USAID-OIG from the period November 20, 2023 through her termination on August 6, 2024. The Request encompassed internal communications, personnel records, supervisory correspondence, and all records reflecting agency actions, decisions, or deliberations concerning Plaintiff during the relevant period. (**See Exhibit A – Plaintiff's FOIA/Privacy Act Request**)

3. Defendant's March 18, 2026 final response was procedurally and substantively deficient, reflecting an inadequate search that failed to identify relevant custodians, systems, search terms, and date ranges, but instead, produced records from wrong timeframes and the wrong agency components; improperly withheld records under Exemption 5, 5 U.S.C. § 552(b)(5); and constructively denied access to categories of plainly responsive records that Plaintiff, based on her professional experience within USAID-OIG, knows to exist.

4. Plaintiff has exhausted all administrative remedies. Plaintiff timely filed an administrative appeal challenging Defendant's deficient response and Defendant failed to act on said appeal within the twenty (20) working-day statutory timeframe prescribed by 5 U.S.C. § 552(a)(6)(A)(ii). Defendant's failure to timely respond constitutes a constructive denial under 5 U.S.C. § 552(a)(6)(C), entitling Plaintiff to seek immediate judicial review in this Court.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. § 552(a)(4)(B), which vests jurisdiction in United States district courts to enjoin agencies from withholding agency records and to order the production of records improperly withheld.

6. This Court has additional jurisdiction pursuant to 5 U.S.C. § 552a(g)(1), which provides civil remedies for individuals aggrieved by an agency's failure to comply with the Privacy Act of 1974, including the right to access records maintained about them in a system of records.

7. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) because Defendant's principal office is located in the District of Columbia, at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20523, and the agency records at issue are situated within this judicial district.

8. Sovereign immunity is waived with respect to the claims asserted herein by operation of 5 U.S.C. § 552(a)(4)(B) (FOIA) and 5 U.S.C. § 552a(g)(1) (Privacy Act), both of which constitute express congressional waivers of the United States' sovereign immunity for claims arising under the respective statutes.

## III. PARTIES

### A. Plaintiff

9. Plaintiff Deidre Y. Kelly is an African American woman residing in Cincinnati, Ohio. Plaintiff brings this action *pro se*.

10. Plaintiff was formerly employed by USAID-OIG as a Paralegal Specialist (FOIA) from approximately November 20, 2023 through August 6, 2024, when her employment was terminated by Defendant.

11. By virtue of her employment, Plaintiff possesses first-hand knowledge of Defendant's records management systems, custodial structures, FOIA processing procedures, electronic mail platforms, and the specific records systems likely to contain documents responsive to her first FOIA/Privacy Act request dated December 18, 2025. (**See Exhibit A – Plaintiff's FOIA/Privacy Act Request**).

**B. Defendant**

12. Defendant United States Agency for International Development-Office of Inspector General (USAID-OIG), is a component of the United States Agency for International Development (USAID) and constitutes an "agency" within the meaning of 5 U.S.C. § 552(f)(1), subject to the requirements of FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.

13. Defendant maintains its principal offices at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20523.

14. Defendant is the custodian of records responsive to Plaintiff's FOIA/Privacy Act request and is responsible for the search, review, and production of such records in compliance with applicable law.

## IV. STATUTORY AND REGULATORY FRAMEWORK

15. FOIA mandates that each federal agency, upon any request for records that reasonably describes such records and is made in accordance with published rules, "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA reflects a "strong presumption in favor of disclosure," and its exemptions are to be "narrowly construed." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

16. To satisfy its obligations under FOIA, an agency must demonstrate that it conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg*

*v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of an agency's search is measured by a standard of reasonableness, and the agency must show that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

17. When an agency invokes a FOIA exemption to withhold records, the agency bears the burden of sustaining the applicability of that exemption. 5 U.S.C. § 552(a)(4)(B). To meet this burden, the agency must provide a sufficiently detailed justification, typically in the form of a *Vaughn* index, to permit meaningful judicial review. *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). The agency must also segregate and release all reasonably segregable, non-exempt portions of responsive records. 5 U.S.C. § 552(b).

18. The Privacy Act of 1974 grants individuals the right to access records pertaining to them that are maintained by a federal agency in a "system of records." 5 U.S.C. § 552a(d)(1). Section 552a(e)(5) requires agencies to maintain all records used in making any determination about an individual "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."

## V. FACTUAL BACKGROUND

### A. Plaintiff's Employment and Termination

19. Plaintiff was employed by USAID-OIG as a Paralegal Specialist (FOIA) during the period of November 20, 2023 through August 6, 2024.

20. In her capacity as a FOIA Paralegal Specialist, Plaintiff was responsible for processing FOIA requests, conducting searches of agency records systems, reviewing

responsive documents, and applying FOIA exemptions. Through this work, Plaintiff gained intimate and detailed knowledge of USAID-OIG's records management systems, electronic mail platforms, personnel records systems, internal databases, FOIA processing workflows, and custodial chains of responsibility.

21. On or about August 6, 2024, Plaintiff's employment with USAID-OIG was abruptly terminated.

22. Plaintiff's termination and the August 6, 2024 termination letter are also the subject of a related Equal Employment Opportunity ("EEO") complaint, *Kelly v. USAID-OIG*, OCR-058-24-F / OFO Appeal No. 2026000015, which remains pending. (**<u>See</u> Exhibit I – Plaintiff's Termination Letter dated August 6, 2024**).

**B. <u>The FOIA/Privacy Act Request – Factual Background</u>**

23. On December 18, 2025, Plaintiff submitted FOIA/Privacy Act Request No. OIG-F-00002-26 to USAID-OIG seeking records relating to her employment, performance, and August 6, 2024 termination. As reflected in the request, Plaintiff sought supervisory communications, internal emails, personnel records, deliberative materials, and other documents generated between November 2023 and August 2024 concerning her employment and separation. (**<u>See</u> Exhibit A – Plaintiff's FOIA/Privacy Act Request**).

24. Despite the statutory requirement that agencies respond within twenty (20) business days, USAID-OIG did not acknowledge receipt of the request, did not assign a tracking number, and did not issue any determination. Plaintiff sent multiple follow-up emails in February 2026 requesting confirmation that her December 18, 2025 request had been received. On February 25, 2026, Defendant provided Plaintiff with a tracking number OIG-F-00002-26 and stated that her request was being processed.

(**See Exhibit B -- FOIA Correspondence and Defendant's February 25, 2026 Response)**.

25. Later that same day, Plaintiff requested the standard acknowledgment information required under FOIA, including the date of receipt, statutory due date, processing track, and whether any extension had been invoked. Defendant did not provide the required information and remained silent until March 18, 2026.

26. On March 18, 2026, three (3) months after Plaintiff's initial request, USAID-OIG issued an incomplete and erroneous response. As shown in **Exhibit B**, Defendant produced only documents that Plaintiff herself had previously submitted to USAID-OIG in response to the August 6, 2024 termination letter, and produced minimal records from USAID-OIG's internal personnel systems, supervisory communications, HR deliberations, or email archives. Defendant mainly produced irrelevant records originating from USAID, the parent agency, covering 2021–2023; materials outside the scope of Plaintiff's request and unrelated to her employment with USAID-OIG. (**See Exhibit B -- FOIA Correspondence and Defendant's March 18, 2026 Response)**.

27. Defendant's response failed to identify the custodians searched, the systems queried, the search terms used, the date ranges applied, or the offices tasked with conducting searches. Further, Defendant did not search electronic mail systems, internal communication platforms, supervisory correspondence files, personnel action tracking systems, or other repositories reasonably likely to contain responsive records. Plaintiff, a former FOIA Paralegal Specialist at USAID-OIG, has direct knowledge that responsive records exist in these systems.

28. Defendant also invoked Exemption 5 without providing a *Vaughn* index or sufficient description to permit meaningful review and failed to segregate non-exempt material as required by 5 U.S.C. § 552(b).

29. On March 10, 2026, Plaintiff timely filed a FOIA administrative appeal challenging Defendant's failure to adequately respond to her December 18, 2025 FOIA/Privacy Act request. As reflected in **Exhibit C**, Plaintiff's appeal asserted that Defendant had failed to issue a determination within the statutory timeframe, had not invoked any lawful extension, and had not provided any substantive response. Plaintiff's appeal further requested that Defendant conduct an adequate search of all USAID-OIG systems reasonably likely to contain responsive records. Defendant failed to issue a determination on this appeal within the statutory deadline, constituting a constructive denial under 5 U.S.C. § 552(a)(6)(C). (**<u>See</u> Exhibit C -- Plaintiff's FOIA Administrative Appeal dated March 10, 2026)**.

30. On March 18, 2026, Defendant issued what it characterized as a "final response" to Plaintiff's December 18, 2025 FOIA/Privacy Act request. As reflected in **Exhibit D**, Defendant informed Plaintiff that "the basis for your appeal has been resolved" and produced a set of password-protected records. The production consisted almost entirely of documents originating from Plaintiff herself, including materials she had previously submitted in response to the August 6, 2024 termination letter, and included two emails from HR, but failed to otherwise include any internal USAID-OIG records, emails, supervisory communications, HR documents, or personnel action records. Defendant also withheld 25 pages in full under Exemption 5 without providing a *Vaughn* index or segregability analysis. This March 18, 2026 production was procedurally and substantively deficient and did not cure the constructive denial of

Plaintiff's request. (**<u>See</u> Exhibit D -- Agency's FOIA Production dated March 18, 2026)**.

31. Plaintiff also sought mediation assistance from the Office of Government Information Services ("OGIS"), further demonstrating her good-faith effort to resolve the matter administratively. (**<u>See</u> Exhibit E -- Plaintiff's Memorandum to OGIS Requesting Mediation dated March 31, 2026)**.

32. On April 15, 2026, Plaintiff submitted a second FOIA administrative appeal challenging USAID-OIG's March 18, 2026 "final response." As reflected in **Exhibit F**, Plaintiff explained that the March 18 production was procedurally and substantively deficient, consisted almost entirely of documents originating from Plaintiff rather than USAID-OIG, failed to include internal emails, supervisory communications, HR records, or deliberative materials, and improperly withheld 25 pages under Exemption 5 without providing a *Vaughn* index. Plaintiff requested that USAID-OIG conduct a new, adequate search of all custodians and systems reasonably likely to contain responsive records and correct the deficiencies identified in the appeal. (**<u>See</u> Exhibit F -- Plaintiff's Second FOIA Appeal dated April 15, 2026)**.

33. On May 12, 2026, Defendant dismissed Plaintiff's FOIA administrative appeal, expressly upholding its deficient March 18, 2026 response and declining to conduct the additional searches Plaintiff identified as necessary. This dismissal exhausted Plaintiff's administrative remedies and constitutes final agency action subject to judicial review under 5 U.S.C. § 552(a)(6)(C). (**<u>See</u> Exhibit G -- Agency's FOIA Appeal Dismissal dated May 12, 2026)**.

## C. <u>The CISO Litigation Hold Memorandum</u>

34. In light of Defendant's deficient search and the apparent absence of records that Plaintiff, based on her professional knowledge, knows to exist within Defendant's records systems, Plaintiff prepared a comprehensive litigation-hold memorandum directed to USAID-OIG's Chief Information Security Officer ("CISO") and other responsible officials. (**<u>See</u> Exhibit H – CISO Memorandum**).

35. The CISO Litigation Hold Memorandum, attached hereto as **Exhibit H**, identifies with specificity the records systems, databases, electronic mail platforms, backup archives, and custodians that Defendant is obligated to preserve pending resolution of this matter and the related EEO proceedings.

36. The CISO memorandum places Defendant on formal notice of its preservation obligations under applicable law and demands the immediate suspension of all auto-delete functions, routine destruction schedules, and records-disposition processes as to all potentially responsive materials.

37. Defendant failed to search the specific custodians and records systems that, based on Plaintiff's direct professional experience as a FOIA Paralegal Specialist at USAID-OIG, necessarily contain responsive records. These custodians include, but are not limited to:

(1) the OIG Human Resources Director and HR/Employee Relations staff;

(2) the Deputy Assistant Inspector General for Management;

(3) Plaintiff's supervisory chain, including her first- and second-line supervisors;

(4) the OIG Chief Counsel and attorneys within the Office of General Counsel; and

(5) the OIG FOIA Branch Chief and FOIA personnel.

38. The records systems and repositories that Defendant failed to search include: OIGNet; OIG SharePoint sites; OIG HR personnel systems; EPIC and eOPF repositories; USAID/OIG email servers and archives; Teams and internal messaging platforms; personnel action tracking systems; and OIG IT backup archives. These systems and custodians are specifically identified in **Exhibit F**, and Defendant's failure to search them renders its search per se inadequate under FOIA.

39. Each of these custodians and systems would, in the ordinary course of USAID-OIG operations, contain records directly responsive to Plaintiff's FOIA/Privacy Act request. The OIG Human Resources Director and HR/Employee Relations staff maintain personnel action documents, termination records, and communications regarding adverse actions. Plaintiff's supervisory chain necessarily generated emails, memoranda, Teams messages, and decision-making records concerning Plaintiff's performance, employment status, and termination. The Deputy Assistant Inspector General for Management oversees personnel and administrative functions and would possess records reflecting deliberations and approvals related to Plaintiff's separation. The OIG Chief Counsel and attorneys within the Office of General Counsel routinely advise on personnel actions, EEO matters, and legal risk assessments, and therefore would possess responsive communications and legal review documents. The OIG FOIA Branch Chief and FOIA personnel maintain internal communications, case notes, and processing records that would reflect discussions about Plaintiff's employment, termination, and related FOIA matters. Likewise, OIGNet, OIG SharePoint, EPIC, eOPF, HR Connect, email servers, Teams archives, and OIG IT backup systems contain the electronic repositories where such records are routinely stored, transmitted, or archived.

Defendant's failure to search these custodians and systems—each of which is specifically identified in **Exhibit F**, renders its search patently unreasonable and contrary to FOIA's requirement that agencies conduct a search reasonably calculated to uncover all responsive records.

40. Defendant's failure to preserve records identified in **Exhibit F**, or the destruction of such records after receipt of notice, would constitute spoliation of evidence warranting adverse inference instructions, sanctions, or such other appropriate relief as this Court may deem just. **(See Exhibit F -- Plaintiff's Second FOIA Appeal dated April 15, 2026)**.

## VI. CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF FOIA — FAILURE TO CONDUCT AN ADEQUATE SEARCH (5 U.S.C. § 552)

41. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 40 of this Complaint as if fully restated herein.

42. Under FOIA, Defendant is required to conduct a search "reasonably calculated to uncover all relevant documents" responsive to a properly submitted FOIA request. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

43. Defendant failed to conduct an adequate search in response to Request No. OIG-F-00002-26 by, *inter alia*:

(a) failing to identify and search relevant custodians within USAID-OIG who would possess records responsive to Plaintiff's request;

(b) failing to search electronic mail systems and internal communication platforms;

(c) searching the wrong agency component (USAID rather than USAID-OIG);

(d) applying incorrect date ranges (2021–2023 rather than November 2023–August 2024);

(e) failing to search personnel records systems, including the Official Personnel Folder; and

(f) failing to document or disclose its search methodology, including search terms, custodians, systems, and date parameters.

44. Defendant's search was not "reasonably calculated to discover" responsive records, as evidenced by the production of predominantly irrelevant records from the wrong agency and wrong timeframe, and the complete absence of categories of records that Plaintiff, as a former FOIA Paralegal Specialist with direct knowledge of USAID-OIG's records systems, knows to exist.

45. Plaintiff is entitled to injunctive relief under 5 U.S.C. § 552(a)(4)(B) ordering Defendant to conduct a new, adequate search of all records systems, custodians, and repositories reasonably likely to contain responsive records, and to produce all responsive, non-exempt records to Plaintiff.

**COUNT II**
**VIOLATION OF FOIA — IMPROPER WITHHOLDING OF RECORDS**
**(5 U.S.C. § 552(a)(4)(B))**

46. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 44 of this Complaint as if fully restated herein.

47. Defendant has improperly withheld agency records responsive to Plaintiff's Request by:

(a) invoking Exemption 5, 5 U.S.C. § 552(b)(5), without providing adequate justification or a *Vaughn* index sufficient to permit meaningful judicial review; and

(b) failing to segregate and release non-exempt portions of withheld records as required by 5 U.S.C. § 552(b).

48. Defendant bears the burden of sustaining any claimed exemption in this Court. 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action").

49. Plaintiff is entitled to injunctive relief ordering Defendant to produce all improperly withheld records, provide a detailed *Vaughn* index identifying each record withheld in whole or in part with specificity, and justify any claimed exemptions to the satisfaction of this Court.

**COUNT III**
**VIOLATION OF FOIA — CONSTRUCTIVE DENIAL**
**(5 U.S.C. § 552(a)(6)(C))**

50. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 49 of this Complaint as if fully restated herein.

51. Defendant failed to issue a determination on Plaintiff's administrative appeal within the twenty (20) working-day statutory deadline prescribed by 5 U.S.C. § 552(a)(6)(A)(ii), thereby constituting a constructive denial of Plaintiff's appeal.

52. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff has exhausted all administrative remedies and is entitled to immediate judicial review of Defendant's actions and omissions.

53. Plaintiff is entitled to injunctive relief compelling Defendant to fully and adequately process and respond to Plaintiff's FOIA request and administrative appeal in compliance with the requirements of 5 U.S.C. § 552.

**COUNT IV**
**VIOLATION OF THE PRIVACY ACT**
**(5 U.S.C. § 552a)**

54. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 53 of this Complaint as if fully restated herein.

55. Plaintiff's Request was submitted under both FOIA and the Privacy Act of 1974, which grants individuals the right to access records pertaining to them that are maintained by a federal agency in a system of records. 5 U.S.C. § 552a(d)(1).

56. Defendant maintains records about Plaintiff in one or more systems of records subject to the Privacy Act, including but not limited to personnel records, employment records, email correspondence, and investigative files.

57. Defendant has failed to grant Plaintiff access to her own records as required by 5 U.S.C. § 552a(d)(1), by conducting an inadequate search, producing irrelevant records, and withholding responsive records without lawful justification.

58. Defendant has further failed to maintain Plaintiff's records with the accuracy, relevance, timeliness, and completeness required by 5 U.S.C. § 552a(e)(5), as evidenced by the production of records from the wrong agency component and wrong timeframe, and the conspicuous absence of records that should exist in the ordinary course of agency operations.

59. Plaintiff is entitled to relief under 5 U.S.C. § 552a(g)(1), including an order directing Defendant to grant Plaintiff access to all records maintained about her, and to amend or correct any records that are inaccurate, incomplete, untimely, or not maintained in compliance with the Privacy Act.

## VII. SPOLIATION AND PRESERVATION OF EVIDENCE

60. The Federal Records Act, 44 U.S.C. §§ 3101–3107, requires federal agencies to create and preserve records that adequately document the organization, functions, policies, decisions, procedures, and essential transactions of the agency. Implementing regulations at 5 C.F.R. § 293.404 further require the maintenance of Official Personnel Folders and related employment records for federal employees.

61. Defendant has been on notice of its obligation to preserve records relevant to Plaintiff's FOIA request, administrative appeal, related EEO proceedings (*Kelly v. USAID-OIG*, OCR-058-24-F / OFO Appeal No. 2026000015), and the claims asserted in this Complaint since, at minimum, the date of Plaintiff's initial FOIA request on December 18, 2025, specifically requesting Plaintiff's personnel information from November 20, 2023 through August 6, 2024.

62. Plaintiff's December 18, 2025 FOIA/Privacy Act request sought records specifically related to her employment with USAID-OIG, not the parent agency USAID. USAID and USAID-OIG maintain separate internal systems, separate personnel repositories, separate email servers, and separate records-management infrastructures. Despite this, Defendant USAID-OIG produced documents that appear to originate from USAID, not USAID-OIG, and none from the OIG systems that maintain personnel, supervisory, or adverse-action records.

63. Notably, Defendant's production consisted almost entirely of documents that Plaintiff herself had previously attached to her responses to the August 6, 2024 termination letter. **(<u>See</u> Exhibit I – Plaintiff's Responses to the August 6, 2024 Termination Letter)**. Defendant failed to produce any records from USAID-OIG's internal systems of personnel information; the production contained none of the emails, supervisory communications, HR deliberative materials, personnel action documents, or internal OIG correspondence that would ordinarily exist regarding Plaintiff's performance, employment status, or termination.

64. Plaintiff had never submitted any FOIA request to USAID-OIG regarding her employment or termination before her December 18, 2025 FOIA/Privacy Act request. Thus, no earlier request existed that could have been misidentified, conflated,

or relied upon to excuse or justify Defendant's inadequate and improper response to the December 18, 2025 request.

65. The complete absence of internal emails, supervisory communications, decision-making memoranda, and personnel action records from Defendant's FOIA production raises a reasonable and substantial inference that relevant records have been destroyed, deleted, or deliberately concealed by Defendant or its agents.

66. Plaintiff's CISO Litigation Hold Memo, attached hereto as **Exhibit H**, hereby places Defendant on specific, detailed notice of the records systems, databases, email platforms, backup archives, and individual custodians requiring immediate preservation. Defendant's receipt of this CISO Hold Memo constitutes actual notice of its affirmative duty to preserve all potentially responsive records and electronically stored information. (**See Exhibit H – CISO Memorandum**).

67. Defendant's failure to produce records that Plaintiff, as a former FOIA Paralegal Specialist with direct, professional knowledge of USAID-OIG's records systems and standard operating procedures, knows to exist constitutes, at minimum, circumstantial evidence of spoliation. The records at issue include, but are not limited to, internal emails among supervisory officials, personnel action documentation, separation processing records, and communications relating to the circumstances of Plaintiff's termination.

68. Destruction of federal records in the face of known FOIA obligations, pending administrative proceedings, and express preservation demands may constitute a violation of the Federal Records Act, 44 U.S.C. §§ 3101–3107, and warrants the imposition of adverse inference instructions, evidentiary sanctions, or such other appropriate relief as this Court deems just.

69. Plaintiff respectfully requests that this Court enter an order compelling Defendant to preserve all records, electronically stored information ("ESI"), metadata, and backup materials identified in **Exhibit F**, and to certify compliance with its preservation obligations by affidavit of a responsible agency official within a time period to be set by this Court. (**See Exhibit F -- Plaintiff's Second FOIA Appeal dated April 15, 2026)**.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Deidre Y. Kelly respectfully requests that this Court:

1. **DECLARE** that Defendant violated FOIA, 5 U.S.C. § 552, by failing to conduct a search reasonably calculated to uncover all records responsive to FOIA/Privacy Act Request No. OIG-F-00002-26;

2. **DECLARE** that Defendant violated FOIA by improperly withholding responsive records and failing to provide adequate justification for its claimed exemptions, including but not limited to Exemption 5, 5 U.S.C. § 552(b)(5);

3. **DECLARE** that Defendant's failure to timely respond to Plaintiff's administrative appeal constitutes a constructive denial under 5 U.S.C. § 552(a)(6)(C), and that Plaintiff has exhausted all administrative remedies;

4. **DECLARE** that Defendant violated the Privacy Act, 5 U.S.C. § 552a, by failing to grant Plaintiff access to records maintained about her in systems of records and by failing to maintain such records with the accuracy, relevance, timeliness, and completeness required by law;

5. **ORDER** Defendant to conduct a new, adequate search of all records systems, custodians, and repositories reasonably likely to contain responsive records, including but not limited to those identified in Exhibit F;

6. **ORDER** Defendant to produce all responsive, non-exempt records to Plaintiff within a time period to be set by this Court;

7. **ORDER** Defendant to provide a detailed *Vaughn* index for any records withheld in whole or in part, with specific identification of the exemption claimed and the factual and legal basis therefor;

8. **ORDER** Defendant to preserve all records, electronically stored information, and metadata identified in Exhibit F and to certify compliance with its preservation obligations by affidavit;

9. **ENTER** an adverse inference instruction or such other appropriate sanction if Defendant is found to have destroyed, deleted, or failed to preserve responsive records after notice of its preservation obligations;

10. **AWARD** Plaintiff reasonable attorney's fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E), noting that Plaintiff proceeds *pro se* at this time but reserves the right to seek fees in the event she retains counsel or as otherwise permitted by law;

11. **GRANT** such other and further relief as this Court deems just and proper.

Respectfully submitted

Deidre Y. Kelly, Plaintiff, *pro se*
3352 Anaconda Drive
Cincinnati, Ohio 45211
513.368.6007
Deidrek2014@gmail.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEIDRE Y. KELLY<br><br>Plaintiff,<br><br>v.<br><br>ERIC UELAND, Acting Administrator, U.S. AGENCY for INTERNATIONAL DEVELOPMENT, et al.<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. ____________________<br><br>(Judge ______________________)<br><br>**PLAINTIFF'S FOIA COMPLAINT EXHIBIT LIST** |

Plaintiff, Deidre Y. Kelly, respectfully submits the following exhibits in support of Plaintiff's FOIA Complaint:

| Exhibit | Exhibit Name | Description |
|---|---|---|
| Exhibit A | Plaintiff's FOIA/Privacy Act Request (Dec. 18, 2025) | A complete copy of FOIA/Privacy Act Request Submitted to USAID-OIG, Seeking Records Relating to Plaintiff's Employment, Performance, and August 6, 2024 Termination.<br><br>Referenced in Complaint ¶¶ 2, 11, 23. |
| Exhibit B | FOIA Correspondence and Defendant's February 25, 2026 Response | Plaintiff's Feb. 25, 2026 Request for Required FOIA Acknowledgment Details<br><br>Referenced in Complaint ¶¶ 24, 26. |
| Exhibit C | Plaintiff's FOIA Administrative Appeal (Mar. 10, 2026) | Plaintiff's Timely Administrative Appeal Challenging the Adequacy of Defendant's Search, Production, and Exemption 5 Withholdings.<br><br>Referenced in Complaint ¶ 29. |
| Exhibit D | Agency's FOIA Production (March 18, 2026) | Agency produced records unrelated to Plaintiff's FOIA/Privacy Act request.<br><br>Referenced in Complaint ¶ 30. |

| Exhibit | Exhibit Name | Description |
|---|---|---|
| Exhibit E | Plaintiff's OGIS Mediation Request (March 31, 2026) | Plaintiff's Request for Mediation Assistance from the Office of Government Information Services Regarding Defendant's Deficient FOIA Processing.<br><br>Referenced in Complaint ¶ 31. |
| Exhibit F | Plaintiff's Second FOIA Appeal (April 15, 2026) | Second FOIA Appeal Challenging the Adequacy of Defendant's March 18, 2026 Production.<br><br>Referenced in Complaint ¶ 32. |
| Exhibit G | Agency's FOIA Appeal Dismissal (May 12, 2026) | USAID-OIG's Final Decision Dismissing Plaintiff's FOIA Administrative Appeal and Affirming its March 18, 2026 Response.<br><br>Referenced in Complaint ¶ 33. |
| Exhibit H | CISO Litigation Hold Memorandum | Plaintiff's Litigation-Hold Memorandum Identifying Specific Custodians, Systems, Repositories, and Electronic Platforms Requiring Preservation.<br><br>Referenced in Complaint ¶¶ 34, 35, 38, 66. |
| Exhibit I | Plaintiff's Termination Letter (Aug. 6, 2024) | Included to demonstrate the relevance of the requested records and the categories of documents that should exist in USAID-OIG systems.<br><br>Referenced in Complaint ¶ 22. |
| Exhibit J | Plaintiff's Responses to the Termination Letter | Included because Defendant improperly produced only Plaintiff's own submissions instead of internal agency records.<br><br>Referenced in Complaint ¶ 63. |

# EXHIBIT A

FOIA/Privacy Act Request No. OIG-F-00002-26
(December 18, 2025)

USAID
FROM THE AMERICAN PEOPLE

OMB APPROVED
OMB NO. XXXX-XXXX
EXPIRES XX-XX-XX

# FREEDOM OF INFORMATION / PRIVACY ACT RECORD REQUEST FORM

**Instructions:** Use of this form is optional. You may use any written format for a Freedom of Information (FOIA) or Privacy Act (PA) Request as long as it contains a description of the information you are requesting and sufficient personally identifying data when required. Failure to provide the required information may result in no acion being taken on the request. Completed forms should be submitted by fax, mail, or e-mailed as scanned attachments. If submitting via e-mail, you should ensure that the security of your e-mail system is adequate for transmitting sensitive information before choosing to transmit your request which contains your personally identifiable information. Mail: U.S. Agency for International Development, M/MS/IRD, Suite 2.07C RRB, 1300 Pennsylvania Avenue NW, Washington, DC 20523-2701. Fax: 202-xxx-xxxx. E-Mail: oigfoia@usaid.gov.

**Section 1. Type of Request – (This section must be completed.)**

**PA/FOIA Request:**

☑ I request my own records.
**(Requester must complete sections 2, 3, 4, and 6.)**

**FOIA Request:**

☐ I am making a request for records about someone or something other than myself.
**(Requester must complete sections 2, 3, and 7.)**

**PA Amendment Request:**

☐ I wish to amend my own records. In accordance with 22 C.F.R. § 215.7, the burden of proof rests with the record subject to illustrate how his/her records are not accurate, timely, relevant, or complete. Requesters should attach additional material to this form. **(Requester must complete sections 2, 4, and 6.)**

**Section 2. Requester Information – (This section must be completed.)**

Full Name: *Deidre Y. Kelly*

Street Address: [redacted]

| City: | State: | Zip Code: | Country: |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | *U.S.A.* |

| Telephone Number: | E-Mail Address: |
|---|---|
| [redacted] | [redacted] |

**Section 3. Describe the type of information requested or the specific records, if known:**

***Please see the attached.***

FREEDOM OF INFORMATION / PRIVACY ACT RECORD REQUEST FORM

**Section 4. Requester's Identifying Information – (Complete this section only if you are making a request for records about yourself.)**

| Social Security Number: [redacted] | Date of Birth (MM/DD/YYYY): [redacted] | |
|---|---|---|
| City of Birth: [redacted] | State: [redacted] | Country of Birth: U.S.A. |

**Section 5. Optional: Authorization to Release Information to a Third Party**

By completing this section, you authorize information relating to you to be released to another person, such as a family member or legal counsel. Pursuant to 5 U.S.C. § 552a(b), I authorize USAID to release my records (defined above) to:

Full Name:

Mailing Address: | E-mail Address:

**Section 6. Proof of Identity**

Acceptable sources include **copies** of **2** of the following source documents that must be notarized by a valid (non-expired) notary public. Check items enclosed with this request **(Send copies only – do not send original documents.)**

Proof of identity of requestor (and subject individual, if not requestor) is required from **two sources.**

Acceptable sources include copies of two of the following source documents that must be notarized by a valid (non-expired) notary public. Check items enclosed with this request:

- ☐ Unexpired U.S. Passport
- ☑ Social Security Card (both sides of card)
- ☑ Unexpired driver's license or ID card issued by a state or outlying possession of the United States, provided it contains a photograph
- ☐ Certificate of U.S. Citizenship
- ☐ Certificate of Naturalization
- ☐ Permanent Resident Card
- ☐ Alien Registration Receipt Card with photograph
- ☐ U.S. Military card or draft record
- ☐ U.S. Military dependent's ID Card

*Under penalty of perjury, I hereby declare that I am the person named above and I understand any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of note more than five years, or both; and that requesting or obtaining any record (s) under false pretenses is punishable under the provision of Title 5, U.S.C, Section 552a (i)(3) as a misdemeanor and by a fine of note more than $5,000.*

Signature [signature] | Date 12.18.2025

**Section 7. Complete this section only if you are requesting records about someone or something other than yourself**

In the box below, you may wish to provide information about yourself and the purpose of your request to help us determine your fee category. While FOIA does not require a requestor to state the purpose of a request, fees may be reduced based on the nature of the requestor or purpose of the request. Fees for searching, copying, and processing records in this category may be levied in accordance with OPM's regulations at 22 C.F.R § 212.35. If you ask for a waiver or reduction of fees, you can also use this box to provide an explanation. Attach a separate page if you need more space than provided below.

- ☐ I agree to pay all applicable fees.
- ☐ I agree to pay up to a specific amount for fees. Specify: $50.00 If applicable.
- ☐ I request a waiver or reduction of fees because I am (check all options listed below that apply):
  - ☐ Affiliated with an educational or non-commercial scientific institution and this request is not for commercial use.
  - ☐ A representative of the news media and this request is part of a news dissemination function and not for commercial use.
  - ☐ Requesting the information in order to contribute significantly to the public understanding of the operations or activities of the government and I do not primarily have a commercial interest in the information.

# FREEDOM OF INFORMATION / PRIVACY ACT RECORD REQUEST FORM

**Privacy Act Statement:**
Information provided by a requester will be used to locate and provide the requester responsive records pursuant to the Freedom of Information Act (5 U.S.C. § 552), and/or the Privacy Act of 1974 (5 U.S.C. § 552a). Authority to collect this information is contained in 5 U.S.C. § 552, 5 U.S.C. § 552a, and 22 C.F.R. § 215.4. The purpose of the collection is to enable the U.S. Agency for International Development to locate applicable records and to respond to requests made under the Freedom of Information Act and the Privacy Act of 1974. Failure to provide the required information may result in no action being taken on the request.

**Routine Use:**
The routine use of this information is for identification purposes and to locate records associated with the requesting individual. Disclosure of this information is mandatory in order to correctly identify the records being requested.

**Information Regarding Disclosure of your Social Security Number (SSN) under Public Law 93-579, Section 7 (b):**
Solicitation of Social Security Numbers (SSNs) by USAID is authorized under the provision of Executive Order 9397, dated November 22, 1943. Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, USAID may be unable to locate records pertaining to you. The use of SSNs is necessary because of the large number of Federal employees, contractors, civilians, and military personnel who have identical names and/or birth date and whose identities can only be distinguished by their SSNs.

**Public Burden Statement:**
Public burden reporting for this collection of information is estimated to be an average of 9 minutes per response, including time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the collection of information. Send comments regarding the accuracy of this burden estimation and any suggestions for reducing the burden to U.S. Agency for International Development, 1300 Pennsylvania Avenue NW, Ronald Reagan Building, Suite 2.07C, Washington, DC 20523-2701.

***Deidre Y. Kelly***
[redacted]

December 18, 2025

**VIA USAID-OIG FOIA PORTAL**
To the FOIA Officer:

**RE**: KELLY, Deidre Y. – Former Paralegal Specialist w/USAID-OIG
FOIA Request

Dear Sir or Madam:

This is a request under the Freedom of Information Act (5 U.S.C. § 552).

I am requesting any and all records in the possession, custody, or control of the agency relating to my termination from federal employment, including but not limited to:

- The August 6, 2024, termination letter issued to me
- Any drafts, copies, or versions of that letter
- Any emails, memoranda, notes, or correspondence between management, HR, Employee Relations, or any other agency personnel concerning my termination
- Any supporting documentation relied upon in making the termination decision

  Any records reflecting the decision-making process, including recommendations, approvals, or internal discussions
- Any records maintained in my eOPF, supervisor's file, HR file, Employee Relations file, or any other system of records that reference or relate to my termination

Please search all locations where responsive records are reasonably likely to be found, including but not limited to: HR systems, supervisor files, Employee Relations files, email systems, shared drives, and any other relevant repositories.

If any portion of the requested records is withheld, please provide the specific FOIA exemption(s) relied upon and release all reasonably segregable portions.

If the agency believes any responsive records have been destroyed or cannot be located, please provide a written explanation describing the search conducted, the records retention schedule relied upon, and the basis for concluding the records no longer exist.

I request that all records be provided in electronic format.

Thank you for your attention to this request.

Sincerely,

***/s/Deidre Y. Kelly***

Deidre Y. Kelly

[redacted]

# **EXHIBIT B**

FOIA Correspondence and Defendant's
February 25, 2026 Response

Gmail [redacted]

# Re: [External]:Re: KELLY, Deidre Y. -- FOIA Request -- Personal Records

2 messages

**USAIDOIG, FOIA** <oigfoia@oig.usaid.gov> Wed, Feb 25, 2026 at 9:36 AM
To: Deidre Kelly [redacted]
Cc: "USAIDOIG, FOIA" <oigfoia@oig.usaid.gov>

Hello,

The tracking number associated with your submission is OIG-F-00002-26. Please use that tracking number on all correspondence. Your request is being processed and you will receive a formal response once the review is complete.

Regards,
USAID OIG FOIA

---

**From:** Deidre Kelly [redacted]
**Sent:** Tuesday, February 24, 2026 3:18 PM
**To:** USAIDOIG, FOIA <oigfoia@oig.usaid.gov>; FOIA Mailbox (USAID) <foia@usaid.gov>
**Cc:** Cortesi, Ashley (IG/M/HC) <acortesi@oig.usaid.gov>; oig.public.affairs@usaid.gov <oig.public.affairs@usaid.gov>; oig.legal@usaid.gov <oig.legal@usaid.gov>
**Subject:** [External]:Re: KELLY, Deidre Y. -- FOIA Request -- Personal Records

You don't often get email from [redacted]. Learn why this is important

**Warning: This email originated outside the organization. Use caution when acting upon it.**

**RE: FOLLOW-UP EMAIL REGARDING FOIA/PRIVACY ACT REQUEST DATED DECEMBER 18, 2025**

Dear USAID-OIG FOIA Office,

I write to follow up on my December 18, 2025 FOIA/Privacy Act request seeking records related to my separation from USAID-OIG, including any termination-related documentation and supporting materials. More than two months have passed, and I have not received a substantive response, acknowledgment, or determination regarding that request.

Because the records sought under FOIA overlap with the records identified in my Privacy Act amendment request—including records contained in, reflected in, or used to support entries in my eOPF—I am concerned that the absence of a FOIA response may be affecting the agency's ability or willingness to address the amendment request fully and accurately.

To ensure clarity and preserve my statutory rights under both the Freedom of Information Act and the Privacy Act, please confirm the following:

1. The status of my pending FOIA/Privacy Act request, including any assigned tracking number; and

2. Whether USAID-OIG maintains, relied upon, or contends that it does not maintain any termination-related narrative or supporting records in any system of records, including but not limited to those used to generate or justify entries in my eOPF.

Thank you for your attention to this matter. I look forward to your prompt response.

Respectfully,

***/s/Deidre Kelly***

Deidre Y. Kelly
Former FOIA Paralegal -- USAID-OIG

DYK/dk
CC: Van Nguyen, Acting Inspector General — via oig.public.affairs@usaid.gov
Daniel Beuke, Acting General Counsel — via oig.legal@usaid.gov
FOIA Public Liaison — foia@usaid.gov

On Thu, Dec 18, 2025 at 3:22 PM Deidre Kelly [redacted] wrote:

> To Whom It May Concern:
> Please see the attached FOIA Request and Supporting Documentation.
> Please process accordingly.
> Should you have any questions or need additional information, please do not hesitate to contact me.
> Best,
>
> --
> *Sincerely,*
>
> *Deidre Y. Kelly*
> [redacted]

--
*Sincerely,*

*Deidre Y. Kelly*
[redacted]

---

**Deidre Kelly** [redacted] Wed, Feb 25, 2026 at 1:52 PM
To: "USAIDOIG, FOIA" <oigfoia@oig.usaid.gov>, "FOIA Mailbox (USAID)" <foia@usaid.gov>
Cc: "USAIDOIG, FOIA" <oigfoia@oig.usaid.gov>, oig.public.affairs@usaid.gov, "Cortesi, Ashley (IG/M/HC)" <acortesi@oig.usaid.gov>, oig.legal@usaid.gov
Bcc: Deidre Kelly [redacted]

February 25, 2026

**SUBJECT**: KELLY, Deidre – Former FOIA Paralegal – USAID-OIG

**RE: FOIA Request Acknowledgment – OIG-F-00002-26**

TO WHOM IT MAY CONCERN:

Good afternoon,

Thank you for email providing the tracking number OIG-F-00002-26 in connection with the above-referenced matter.

As a former FOIA Paralegal Specialist with USAID-OIG, I am requesting the following additional information (in the form of an acknowledgement letter), to ensure the administrative record is complete and consistent with the requirements of the Freedom of Information Act, 5 U.S.C. § 552.

Please provide the following information customarily included in USAID-OIG's standard acknowledgment letters:

1. The date USAID-OIG received my request, as required by 5 U.S.C. § 552(a)(6)(A)(i);

2. The statutory due date for the Agency's determination within twenty (20) working days, pursuant to § 552(a)(6)(A)(i);

3. Whether USAID-OIG is invoking a 10-day extension under § 552(a)(6)(B)(i);

4. The processing track assignment (simple, complex, or expedited), consistent with § 552(a)(6)(D);

5. The name and contact information for the FOIA Public Liaison, as required by § 552(a)(6)(B)(ii);

6. A brief description of the next steps in the review process; and

7. A summary of the FOIA request as logged by USAID-OIG, to ensure clarity and accuracy regarding the scope of the request.

Providing this information will ensure the FOIA record is complete and consistent with statutory and regulatory requirements.

Thank you for your attention to this matter.

Regards,

Deidre Y. Kelly

***/s/Deidre Y. Kelly***

Deidre Y. Kelly
Former FOIA Paralegal, USAID-OIG
DYK/dk

CC: Van Nguyen, Acting Inspector General — via oig.public.affairs@usaid.gov
Daniel Beuke, Acting General Counsel — via oig.legal@usaid.gov
FOIA Public Liaison — foia@usaid.gov

[Quoted text hidden]

# **EXHIBIT C**

Plaintiff's Initial FOIA Administrative Appeal
(Mar. 10, 2026)

# M E M O M O R A N D U M

**TO:** FOIA Appeals Officer
USAID Office of Inspector General

cc: Acting Inspector General
Acting General Counsel

**FROM:** Deidre Y. Kelly
Former – USAID-OIG FOIA Paralegal

**DATE:** March 10, 2026

**RE:** Administrative Appeal of Constructive Denial
FOIA/PA Request OIG-F-00002-26

## FOIA ADMINISTRATIVE APPEAL
## KELLY, DEIDRE Y. -- OIG-F-00002-26

## I. INTRODUCTION

This is an administrative appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, challenging the constructive denial of my December 18, 2025, FOIA/Privacy Act request submitted to the USAID Office of Inspector General ("USAID-OIG").

USAID-OIG assigned the request tracking number **OIG-F-00002-26** but has failed to issue a determination within the statutory time period required by FOIA.

Under 5 U.S.C. § 552(a)(6)(C)(i), an agency's failure to comply with the applicable time limits constitutes a constructive denial and permits the requester to seek administrative review. Accordingly, this appeal is properly filed.

## II. BACKGROUND

On December 18, 2025, I submitted a FOIA/Privacy Act request to USAID-OIG seeking records concerning my separation from USAID-OIG, including but not limited to:

- Records related to my separation or termination;
- Termination-related documentation; and
- Any supporting or related records maintained in any system of records,

including supervisory files, human resources systems, or other recordkeeping systems reasonably likely to contain responsive records.

USAID-OIG provided a tracking number for the request but has not issued a determination within the timeframe required by FOIA.

More than two months have now passed since submission of the request. USAID-OIG has not issued:

- A determination regarding the request;
- A lawful extension of time; or
- Any substantive response regarding the status of the request.

## III. GROUNDS FOR APPEAL

### 1. Failure to Issue a Timely Determination *(5 U.S.C. § 552(a)(6)(A)(i))*

FOIA requires an agency to determine whether it will comply with a request within twenty (20) working days after receipt.

USAID-OIG has not issued any determination regarding my request. The statutory response period has long expired.

### 2. Failure to Invoke a Statutory *Extension* (5 U.S.C. § 552(a)(6)(B)(i))

FOIA allows an agency to invoke a limited extension of time when “unusual circumstances” exist. However, the statute requires that the agency notify the requester of the extension within the original response period.

USAID-OIG did not invoke any extension within the statutory timeframe. An extension cannot be invoked retroactively after the deadline has passed.

### 3. Constructive Denial *(5 U.S.C. § 552(a)(6)(C)(i))*

Because USAID-OIG has failed to issue a determination within the time limits established by FOIA, the request is deemed constructively denied. The requester is therefore entitled to seek administrative review.

### 4. Adequacy of Search Obligations

USAID-OIG is required to conduct a search reasonably calculated to uncover all relevant documents. Such a search must include **all systems of records reasonably likely to contain responsive records**, including but not limited to:

- Official personnel systems;
- Supervisory or management files;
- Agency email systems; and
- Any other agency recordkeeping systems that may contain responsive records.

If USAID-OIG contends that responsive records have been retired, destroyed, or transferred, the agency should identify the applicable records disposition authority and the date of transfer.

## IV. REQUESTED RELIEF

I respectfully request that USAID-OIG:

1. Promptly process my December 18, 2025, FOIA/Privacy Act request;
2. Conduct an adequate search of all systems of records reasonably likely to contain responsive documents;
3. Produce all non-exempt responsive records without further delay;
4. Provide a **Vaughn index** describing any records withheld in whole or in part; and
5. Identify with specificity any exemptions relied upon to justify withholding responsive records.

Given that the requested records relate to my federal employment and separation from the agency, I further request that all responsive records be preserved pending completion of this administrative review and any related administrative or judicial proceedings.

Because this request seeks records about me, it also constitutes a request for access under the Privacy Act, 5 U.S.C. § 552a(d), which provides individuals the right to obtain records maintained about them in a system of records.

## V. CONCLUSION

USAID-OIG's failure to comply with FOIA's statutory deadlines constitutes a constructive denial of my request.

For the reasons set forth above, I respectfully request that this appeal be granted and that USAID-OIG promptly process my December 18, 2025, FOIA/Privacy Act request in full compliance with FOIA and the Privacy Act.

Respectfully submitted,

***/s/Deidre Y. Kelly***

Deidre Y. Kelly
Former FOIA, Paralegal Specialist
DYK/dk
CC: Van Nguyen, Acting Inspector General — via oig.public.affairs@usaid.gov
Daniel Beuke, Acting General Counsel — via oig.legal@usaid.gov
FOIA Public Liaison — foia@usaid.gov

# <u>EXHIBIT D</u>

Agency's FOIA Production (March 18, 2026)

*Office of Inspector General*

March 18, 2026

Ms. Deidre Kelly
[redacted]

Dear Ms. Kelly

TRANSMITTED VIA EMAIL to [redacted]

Re: FOIA Request No. OIG-F-00002-26
Final Response

Dear Ms. Kelly:

This letter is in response to your Freedom of Information Act (FOIA) request dated December 18, 2025, seeking the following six items:

1. The August 6, 2024, termination letter issued to me
2. Any drafts, copies, or versions of that letter
3. Any emails, memoranda, notes, or correspondence between management, HR, Employee Relations, or any other agency personnel concerning my termination
4. Any supporting documentation relied upon in making the termination decision
5. Any records reflecting the decision-making process, including recommendations, approvals, or internal discussions
6. Any records maintained in my eOPF, supervisor's file, HR file, Employee Relations file, or any other system of records that reference or relate to my termination

OIG conducted a thorough search for records. Eighty-five pages are being released to you in full and twenty-five pages are being withheld (draft letters) in full pursuant to Exemption b(5) to avoid disclosure of privileged communications see 5 U.S.C. § 552(b)(5).

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This

response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

I trust that this information fully satisfies your request. If you need any further assistance or would like to discuss any aspect of your request, please do not hesitate to contact me. You may also contact USAID OIG's FOIA Public Liaison, at oigfoia@oig.usaid.gov. Additionally, you may contact the Office of Government Information Services (OGIS) to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road-OGIS
College Park, Maryland 20740
Email: ogis@nara.gov
Telephone: 202-741-5770
Toll-free: 1-877-684-6448
Facsimile: 202-741-5769

If you are not satisfied with the response to this request, you may administratively appeal by writing to oigfoia@oig.usaid.gov. Please include a copy of your initial request, a copy of this letter, and a statement explaining why you disagree with our decision. Your appeal must be postmarked or electronically transmitted within 90 days of the date of the response to your request. Please include "FOIA Appeal" in the subject line.

There is no charge for this FOIA request. As this concludes the processing of your request, it will be closed.

Sarah Wahl

FOIA Officer

# **EXHIBIT E**

OGIS Mediation Request

(March 31, 2026)

***DEIDRE Y. KELLY***
[redacted]

March 31, 2026

**ATTENTION**: (via email: )
**Office of Government Information Services (OGIS)**

**SUBJECT**: Request for OGIS Mediation
USAID-OIG FOIA Request No. OIG-F-00002-26

Dear Sir or Madam:

I am requesting OGIS mediation regarding USAID-OIG's handling of my **FOIA Request No. OIG-F-00002-26**, submitted on December 18, 2025. I previously filed an administrative appeal for failure to respond. In reaction to that appeal, USAID -OIG issued a "**final response**" on March 18, 2026. However, the response is procedurally and substantively deficient, and I am seeking OGIS assistance to resolve the following issues.

## I. INADEQUATE SEARCH

USAID-OIG's response letter states only that it "conducted a thorough search for records." The Agency did **not** identify:

- custodians searched;
- systems searched;
- search terms used;
- date ranges used;
- offices tasked; and
- methods used.

The production consisted almost entirely of documents that originated from me (e.g., my own work product, personnel forms, and exhibits). No emails, drafts, notes, internal discussions, HR communications, GC communications, supervisory

communications, or deliberative materials were produced, despite my request specifically seeking these categories.

This strongly suggests that USAID-OIG did not search the systems or custodians reasonably likely to contain responsive records.

Additionally, the production included several **blank, uncompleted forms** (e.g., AID 451-1 Exit Clearance, USAID Records Management Exit Checklist, Debriefing Certification). These forms were not filled out by me or the agency and are not responsive to my request. Their inclusion suggests that USAID-OIG did not retrieve my actual exit documents and instead provided generic templates. This further indicates that the agency did not search the correct custodians or systems, such as OIG HR, Employee Relations, or supervisory files, where completed versions of these forms would normally be maintained.

## II. WRONG CUSTODIANS AND WRONG SYSTEMS

My request sought records related to my termination from **USAID-OIG** (November 2023–August 2024).

However, the production included numerous records from **USAID (the parent agency)** dating back to 2021–2023, which are unrelated to my OIG employment.

The Agency provided no explanation for:

- why USAID records were included;
- why OIG records were **not** included; and
- why OIG HR, OIG Employee Relations, OIG General Counsel, OIG FOIA, OIG leadership, and supervisory files were not searched.

## III. WRONG TIMEFRAME

The request covered **November 2023–August 2024**.

Over **ninety-five percent (95%)** of the production consisted of records from **2021–2023**, which fall outside the scope of the request.

## IV. IMPROPER WITHHOLDINGS UNDER EXEMPTION 5

USAID-OIG withheld **25 pages** in full, described only as "**draft letters**," under Exemption 5.

No Vaughn index or analysis identifying non-exempt portions was provided. Given the nature of a termination action, it is not credible that only **25 pages** of drafts or deliberative material exist.

## V. ATTEMPT TO MOOT MY APPEAL IMPROPERLY

The email accompanying the production stated that the basis for my appeal had been "**resolved**."

This is incorrect.

Issuing a defective response does not resolve an appeal alleging:

- failure to respond;
- inadequate search;
- improper withholdings; and
- failure to produce responsive records.

## VI. REQUESTED OGIS ASSISTANCE

I respectfully request OGIS mediation to address the following:

1. Whether USAID-OIG conducted an adequate search;
2. Whether the correct custodians and systems were searched;
3. Whether the agency's withholdings under Exemption 5 were proper;
4. Whether additional responsive records exist and should be produced;
5. Whether USAID-OIG must provide a detailed description of its search methods; and
6. Whether a proper Vaughn index and identification of non-exempt information are required.

## VII. SUPPORTING DOCUMENTATION

For efficiency and to avoid delays, I am attaching the relevant correspondence and FOIA/Privacy Act submissions referenced above. These documents demonstrate that USAID-OIG has acknowledged the existence of the August 6, 2024 termination letter and related records yet has refused to identify their location or produce them. They also show inconsistent statements regarding recordkeeping, failure to issue a proper FOIA acknowledgment, and repeated failures to identify custodians or systems of records. I am providing these materials now so OGIS has a complete record and may proceed directly to engaging the Agency.

I am seeking a fair and complete resolution without litigation, and I believe OGIS mediation is appropriate and necessary given the deficiencies in the agency's response.

Thank you for your time and assistance.

Respectfully,

***/s/ Deidre Y. Kelly***

Deidre Y. Kelly
Former Paralegal Specialist (FOIA)
USAID-OIG
[redacted]

DYK/dk
Attachments:
• FOIA Request Emails
• FOIA Follow-Up Emails
• Supporting Correspondence (Privacy Act & HR Communications)
• USAID-OIG's FOIA Production

Cc: USAID-OIG FOIA (email: oigfoia@oig.usaid.gov)
Van Nguyen, Acting Inspector General (email: vnguyen@oig.usaid.gov)
Daniel Beuke, Acting General Counsel (email: dbeuke@oig.usaid.gov)
USAID Public Affairs (email: oig.public.affairs@usaid.gov)
FOIA Public Liaison (email: foia@usaid.gov)

# <u>EXHIBIT F</u>

Plaintiff's Second FOIA Appeal (April 15, 2026)

DEIDRE Y. KELLY
[redacted]

April 15, 2026

**VIA EMAIL: (oigfoia@oig.usaid.gov)**
FOIA Appeals Officer
USAID Office of Inspector General
Washington, DC

**RE:** FOIA Appeal
USAID-OIG FOIA Request No. OIG-F-00002-26

To the FOIA Appeals Officer:

I am submitting this administrative appeal pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and the instructions contained in USAID-OIG's March 18, 2026 response letter. I am appealing USAID-OIG's "final response" to my FOIA Request No. OIG-F-00002-26 on the grounds that the response is procedurally and substantively deficient.

As instructed, I am including the following:

1) a copy of my initial FOIA request (December 18, 2025) and related emails;

2) a copy of USAID-OIG's March 18, 2026 response; and

3) this statement which explains why I disagree with the Agency's determination.

## I. INADEQUATE SEARCH

USAID-OIG's response states only that it "conducted a thorough search," but the Agency did not identify:

- custodians searched
- systems searched
- search terms used
- date ranges used
- offices tasked
- methods used

The production consisted almost entirely of documents that originated from me. No emails, drafts, notes, internal discussions, HR communications, GC communications, supervisory communications, or deliberative materials were produced, despite my request specifically seeking these categories.

Additionally, the production included several blank, uncompleted forms (e.g., AID 451-1 Exit Clearance, USAID Records Management Exit Checklist, Debriefing Certification). These forms were not filled out by me or the Agency and are not responsive to my request. Their inclusion suggests that USAID-OIG did not retrieve my actual exit documents and instead provided generic templates, indicating that the wrong custodians and systems were searched.

## II. WRONG CUSTODIANS AND WRONG SYSTEMS

My request sought records related to my termination from USAID-OIG (November 2023–August 2024). However, the production included numerous records from USAID (the parent agency) dating back to 2021–2023, which are unrelated to my OIG employment.

USAID-OIG provided no explanation for:

- why USAID records were included
- why OIG records were not included
- why OIG HR, OIG Employee Relations, OIG General Counsel, OIG FOIA, OIG leadership, and supervisory files were not searched

## III. WRONG TIMEFRAME

The request covered November 2023–August 2024.

Over ninety-five percent (95%) of the production consisted of records from 2021–2023, which fall outside the scope of the request.

## IV. IMPROPER WITHHOLDINGS UNDER EXEMPTION 5

USAID-OIG withheld 25 pages in full under Exemption 5, described only as “draft letters.”

No Vaughn index or segregability analysis was provided.

Given the nature of a termination action, it is not credible that only 25 pages of drafts or deliberative material exist.

## V. ATTEMPT TO MOOT MY APPEAL IMPROPERLY

The email accompanying the production stated that the basis for my appeal had been "resolved."

This is incorrect.

Issuing a defective response does not resolve an appeal alleging:

- failure to respond
- inadequate search
- improper withholdings
- failure to produce responsive records

## VI. REQUESTED RELIEF

I respectfully request that USAID-OIG:

1) Conduct a new, adequate search of all custodians and systems reasonably likely to contain responsive records;

2) Identify all custodians, systems, search terms, and methods used;

3) Produce all responsive records

4) Re-review all withholdings and provide a proper Vaughn index

5) Segregate and release all non-exempt information

6) Correct the deficiencies identified above

**VIA EMAIL: (oigfoia@oig.usaid.gov)**
FOIA Appeals Officer
USAID Office of Inspector General
April 15, 2026
Page Four

Thank you for your attention to this appeal. I look forward to your response within the statutory timeframe.

Respectfully,

***/s/ Deidre Y. Kelly***

Deidre Y. Kelly
Former Paralegal Specialist (FOIA)
USAID-OIG
[redacted]

DYK/dk
Attachments
• Initial FOIA Request (Dec. 18, 2025)
• USAID-OIG's March 18, 2026 Response
• FOIA Request Emails
• FOIA Follow-Up Emails
• Supporting Correspondence (Privacy Act & HR Communications)
• USAID-OIG's FOIA Production

Cc: Van Nguyen, Acting Inspector General (email: vnguyen@oig.usaid.gov)
Daniel Beuke, Acting General Counsel (email: dbeuke@oig.usaid.gov)
USAID Public Affairs (email: oig.public.affairs@usaid.gov)
FOIA Public Liaison (email: foia@usaid.gov)

# EXHIBIT G

Agency's FOIA Appeal Dismissal (May 12, 2026)

*Office of Inspector General*

May 12, 2026

Ms. Deidre Kelly
[redacted]

TRANSMITTED VIA EMAIL to [redacted]

Re: Appeal of FOIA Request No. OIG-F-00002-26

Dear Ms. Kelly:

You appealed the determination of the FOIA Officer of the U.S. Agency for International Development (USAID) Office of Inspector General (OIG) regarding your request for access to records concerning letters, supporting documents, and records related to your termination.

The Freedom of Information Act provides for disclosure of many agency records. At the same time, Congress included nine exemptions from disclosure that provide protection for important interests, such as, personal privacy, privileged communications, and certain law enforcement activities.

After carefully considering your appeal, I am affirming the FOIA Officer's action on your request.

The FOIA Officer properly withheld certain information because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(5). This provision concerns certain inter- and intra-agency communications protected by the deliberative process privilege, attorney work-product privilege, or attorney-client privilege.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal, underlying request, and the actions of the FOIA Officer in response to your request were thoroughly reviewed and analyzed.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 522(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 301-837-1996, toll free at 1-877-684-6448; or facsimile at 301-837-0384.

Sincerely,

Daniel Beuke
Acting General Counsel
USAID OIG

# **EXHIBIT H**

CISO Litigation Hold Memorandum

# MEMORANDUM

**TO:** Sheryl L. Sanderson, Agency Records Officer (USAID)

**FROM:** Deidre Y. Kelly

**DATE:** May 25, 2026

**RE:** *KELLY, Deidre Y. v. USAID-OIG*, OCR-058-24-F
EEOC-OFO Appeal No.: 2026000015 / CISO Request

Pursuant to USAID Automated Directives Systems (ADS) Chapters 158 (Document Retention and Collection Orders), 508 (Information Management), and 545 (Information System Security), Appellant requests information or assistance from the Chief Information Security Office with the application of a litigation hold.

Due to current litigation styled *Deidre Y. Kelly v. USAID-OIG,* OCRD-058-24-F, the following information is subject to a litigation hold and Appellant hereby requests this information be retained by CISO (no deletions or alterations including a preservation of the metadata).

In January 2025, the Trump administration issued an Executive Order that dismantled USAID, resulting in the departure of numerous employees across the agency. Despite their separation, the email records of these individuals remain subject to federal retention requirements. Pursuant to the Federal Records Act (44 U.S.C. Chapters 21, 29, 31, and 33) and National Archives General Records Schedule (GRS) 6.1, item 020, email records of non-Capstone officials must be retained for a minimum of seven (7) years after the employee's departure, unless otherwise scheduled by the agency. Accordingly, all email accounts listed in the attached litigation hold must be preserved in full, including metadata, to ensure compliance with legal obligations and prevent spoliation of evidence.[1]

This request is made pursuant to the preservation obligations triggered by pending administrative appeals, potential whistleblower protections, and anticipated FOIA litigation. USAID-OIG is hereby notified that failure to preserve these records may constitute spoliation and undermine the integrity of ongoing proceedings. Including, but not limited to:

---

[1]USAID-OIG is obligated to preserve electronic records under the Automated Directives System (ADS) Chapters 508 (Information Management) and 545 (Information System Security), which incorporate federal mandates under the Federal Records Act (44 U.S.C. Chapters 21, 29, 31, and 33). Additionally, the National Archives and Records Administration (NARA) General Records Schedule (GRS) 6.1, item 020, requires that email records of non-Capstone officials be retained for a minimum of seven years following separation, unless otherwise scheduled. These requirements apply regardless of employment status and are enforceable in the context of litigation holds, FOIA obligations, and whistleblower protections.

**Standard Litigation Hold Instructions**:

| **Last Name, First Name, Email Address:** | **G Suite** | **Gmail** | **U Drive** | **Date Range** | **Restrictions (e.g., search terms and "do not include" terms)** |
|---|---|---|---|---|---|
| KELLY, Deidre<br>dkelly@usaid.gov<br>(no longer with USAID-OIG) | X | X | X | September 2023 to August 6, 2024 | |
| ADEYEMI, Aramide<br>aadeyemi@usaid.gov<br>aadeyemi@oig.usaid.gov | X | X | X | September 2023 through present | |
| ANGARELLA, Nicole<br>nangarella@usaid.gov<br>(No longer with USAID-OIG) | X | X | X | September 2023 through June, 2024 | |
| COATES, Nicholas<br>ncoates@usaid.gov<br>ncoates@oig.usaid.gov | X | X | X | September 2023 through present | |
| DeLIA, George<br>gdelia@usaid.gov<br>gdelia@oig.usaid.gov | X | X | X | September 2023 through present | |
| HEISER, Jeanne<br>jheiser@usaid.gov<br>jheiser@oig.usaid.gov | X | X | X | September 2023 through present | |
| HERRMANN, Jennifer<br>jherrmann@oig.usaid.gov<br>jherrmann@usaid.gov<br>(No longer with USAID-OIG) | X | X | X | September 2023 through February 2025 | |
| INGRAM, Richard<br>ringram@usaid.gov<br>ringram@oig.usaid.gov | X | X | X | September 2023 through present | |
| JAMES, Kathrina<br>katjames@usaid.gov<br>katjames@oig.usaid.gov | X | X | X | September 2023 through present | |
| KAPLAN, Adam<br>adamkaplan@usaid.gov<br>adamkaplan@oig.usaid.gov | X | X | X | September 2023 through present | |

| **Last Name, First Name, Email Address:** | **G Suite** | **Gmail** | **U Drive** | **Date Range** | **Restrictions (e.g., search terms and "do not include" terms)** |
|---|---|---|---|---|---|
| KICIELINSKI, Lkhagvaa<br>lkicielinski@usaid.gov<br>lkicielinski@oig.usaid.gov | X | X | X | September 2023 through present | |
| KILLIAN, Kathleen<br>kkillian@usaid.gov | X | X | X | August 2024 through present | |
| McLAUGHLIN, Judy<br>jmclaughlin@usaid.gov<br>jmclaughlin@oig.usaid.gov | X | X | X | September 2023 through present | |
| McRAE-ALSTON, Courtney<br>cmcraealston@usaid.gov<br>cmcraelston@oig.usaid.gov | X | X | X | September 2023 through present | |
| MARTIN, Paul K.<br>pmartin@usaid.gov<br>pmartin@oig.usaid.gov<br>(No longer with USAID-OIG) | X | X | X | September 2023 through January, 2025 | |
| MOTO-SOUFFRONTT, Maybelline<br>msotosouffrontt@usaid.gov<br>msotosouffrontt@oig.usaid.gov | X | X | X | September 2023 through present | |
| O'HARA, Kaitlin<br>kohara@usaid.gov<br>kohara@oig.usaid.gov | X | X | X | September 2023 through present | |
| OBANDO, Ashley<br>aobando@usaid.gov<br>aobando@oig.usaid.gov | X | X | X | September 2023 through present | |
| PARADISE, Margaret<br>mparadise@usaid.gov<br>mparadise@oig.usaid.gov | X | X | X | September 2023 through present | |
| RYAN, Sara<br>sryan@usaid.gov<br>(No longer with USAID) | X | X | X | September 2023 through present | |
| SCHWARTZBAUGH, Fritz<br>fschwartzbaugh@usaid.gov<br>fschwartzbaugh@oig.usaid.gov | X | X | X | September 2023 through present | |

| **Last Name, First Name, Email Address:** | **G Suite** | **Gmail** | **U Drive** | **Date Range** | **Restrictions (e.g., search terms and "do not include" terms)** |
|---|---|---|---|---|---|
| SYLVESTER, Laura<br>lsylvester@usaid.gov<br>lsylvester@oig.usaid.gov | X | X | X | September 2023 through present | |
| TRAORE, Gilbert<br>gtraore@usaid.gov<br>gtraore@oig.usaid.gov | X | X | X | September 2023 through present | |
| TRUMBO, Davida<br>dtrumbo@usaid.gov<br>dtrumbo@oig.usaid.gov | X | X | X | May 2024 through present | |

In addition to the directives cited above, USAID's obligations under ADS Chapter 502 (Records Management Program) further underscore the requirement to preserve all records—electronic or otherwise—created or received during official business. ADS 502 mandates that records, including emails, must be managed in accordance with the Federal Records Act and NARA regulations, regardless of an employee's separation from the agency. This includes proper retention, storage, and accessibility of records relevant to litigation, FOIA requests, or investigations. Accordingly, the email accounts identified in this memorandum must be preserved in full, including associated metadata, to ensure compliance with ADS 502 and to prevent unlawful destruction or spoliation of federal records.

Appellant requests that this litigation hold be effectuated within ten (10) business days of receipt of same. Including, but not limited to the above-referenced names, Appellant respectfully requests this litigation hold specifically includes all records maintained by Human Capital/HR, including the August 6, 2024, termination letter and all correspondence relating to same.

Further, this litigation hold request, supplements Appellant's FOIA/Privacy Act request and ensures preservation of all responsive records pending disclosure.

Finally, Appellant hereby reserves the right to supplement this request with additional information, including but not limited to relevant custodians, email addresses, system identifiers, and metadata parameters, as necessary to ensure comprehensive preservation of records associated with this pending appeal.

Should you have any questions or concerns, please do not hesitate to contact Appellant directly at the above-referenced address, email and/or telephone number.

Thank you in advance for your consideration.

Sincerely,

***/s/Deidre Y. Kelly, Plaintiff***

Deidre Y. Kelly, Plaintiff

DYK/dk

Cc: oigfoia@oig.usaid.gov
OIGLegAffairs@oig.usaid.gov

# <u>EXHIBIT I</u>

Plaintiff's Termination Letter
(August 6, 2024)

***Office of Inspector General***

August 6, 2024

**MEMORANDUM**

**TO:** Deidre Kelly
Paralegal Specialist

**FROM:** Jennifer Herrmann
Acting General Counsel

Re: Notification of Termination of Probationary Appointment

On November 20, 2023, under 5 C.F.R. § 213.3102(u) you were appointed to the position of Paralegal Specialist, GS-12 Step 1, with the United States Agency for International Development Office of Inspector General (OIG). Your excepted service appointment is subject to the completion of a two-year probationary or trial period. Employees may be terminated during their probationary or trial period because their work performance or conduct fails to demonstrate their fitness or qualifications required for the position hired for continued employment.

This letter is to inform you that your employment with OIG will be terminated effective immediately upon receipt of this letter. You have failed to demonstrate your fitness or qualifications for continued employment based on your conduct and performance.

Your performance is unsatisfactory. You do not have the requisite knowledge and experience with the Freedom of Information Act (FOIA) for your position. As a Paralegal Specialist you are to demonstrate a working knowledge of jurisprudence relevant to advancing the mission and goals of OIG and provide impactful and accurate support and advice to stakeholders in FOIA and Privacy Act. Your resume states you have FOIA experience, but after beginning at OIG you indicated that you did not have experience with FOIA. Subsequently, your performance has reflected that lack of experience. You have been provided with trainings and materials on FOIA, but you continue to lack the requisite knowledge of FOIA and do not meet the qualifications of the position.

Despite being provided with training and resources on FOIA, you continue to make mistakes requiring substantial oversight and continue to not grasp numerous basic aspects required of the position. I have provided feedback on letters that you have prepared from

templates; however, you continue to make the same errors and fail to use the templates as requested. In addition, I asked you to research two FOIA issues, and in both memorandums, what you provided was largely a copy and paste from websites with no citation to that website and without any analysis by you. This is not acceptable for a paralegal in your position. Despite training and feedback, you have not shown the necessary skills and abilities necessary to succeed in this position.

Your conduct has also been an issue while working for the OIG. I have received several complaints about your conduct towards and interactions with employees and contractors. You have engaged in behavior towards employees and contractors that has been inappropriate and confrontational to include a verbal altercation with a fellow staff member that I later counseled you on. Furthermore, I received complaints about you potentially violating the Hatch Act, including advocating against a partial political candidate while at work. In addition, you were observed watching and/or listening to commentary advocating against a partisan political candidate during work hours. These incidences caused me to counsel you on the Hatch Act. In addition to the aforementioned conduct, I have also discussed concerns with your failure to follow policy and procedure specifically as it relates to security of our office space.

Additionally, you have undermined the Office of General Counsel's (OGC) relationship with OIG's other internal business units and with external entities. I have asked you to reach out to me first before contacting external entities, and you have continued to not follow my instruction. On July 10, 2024, I learned you reached out to the Department of Justice's (DOJ) Office of Information and Privacy where you provided the DOJ with inaccurate information about OIG's FOIA process causing me to have to correct the inaccurate information you provided.

You are instructed to immediately return all government property (government issued cell phone, laptop, desk keys, remote token, PIV card/identification badge, etc.). Any government property that you do not have with you in the office today to return, must be mailed to OIG immediately. You must contact Judy McLaughlin, Director of Human Capital, at 202-258-7460 or jmclaughlin@usaid.gov for a prepaid mail label and instructions on how to return the government property.

This is a final decision. You have the right to contest this action through the avenues outlined below.

If you believe that this decision is motivated in whole or in part by discrimination based on your race, color, religion, sex (including pregnancy, sexual orientation, or gender identity), national origin, disability, age, genetic information, or as reprisal for engaging in Equal Employment Opportunity (EEO) activity, you may elect to pursue a complaint through the EEO procedures in 29 C.F.R. § 1614.301. Also, if you believe this action is based in whole or in part on discrimination based on your parental status or sexual orientation, you may elect to pursue a complaint through the EEO procedures under the provisions of Executive Order 11478, as amended. You may contact an EEO counselor with USAID's Office of Civil Rights (OCR) to file a complaint through the EEO process within 45 days of your receipt of this letter. You may initiate a complaint with USAID OCR at eeocomplaints@usaid.gov. You have the right to file a

complaint with the U.S. Equal Employment Opportunity Commission consistent with the provisions of 5 USC 7121 (d) and 29 CFR 1614.301 and 1614.302, http://www.eeoc.gov/.

If you believe that this action is being taking against you as reprisal for making protected whistleblowing disclosures, you may seek corrective action under subchapters II and III of 5 U.S.C. Chapter 12, by filing a complaint with the Office of Special Counsel (OSC), www.osc.gov. If you file a complaint with OSC, you may subsequently file an Individual Right of Action (IRA) appeal with the Merit Systems Protection Board, http://www.mspb.gov/.

If you have any questions concerning the rights or procedures regarding this action, you may contact Judy McLaughlin, Director of Human Capital, at 202-258-7460 or jmclaughlin@usaid.gov.

You are asked to sign the receipt acknowledgment section of this letter as evidence that you have received it. Your signature does not mean that you agree or disagree with the contents of this letter, and by signing you do not forfeit any of the rights cited above.

cc: Office of Human Capital

**ACKNOWLEDGMENT OF RECEIPT**

Please sign this acknowledgment as evidence that you have received Notification of Termination of Probationary Appointment. Your signature does not mean that you agree or disagree with its contents, and by signing, you do not forfeit any of the rights cited above.

I acknowledge receipt of the Notification of Termination of Probationary Appointment
.

Employee's signature: ______________________________ Date: ____________

# **EXHIBIT J**

Plaintiff's Responses to the Termination Letter

## APPELLANT'S RESPONSES

**ALLEGATION NO. 1**

The letter indicates that "your performance is unsatisfactory. You do not have the requisite knowledge and experience with the Freedom of Information Act (FOIA) for your position." As a Paralegal Specialist you are to demonstrate a working knowledge of jurisprudence relevant to advancing the mission and goals of OIG and provide impactful and accurate support and advice to stakeholders in FOIA and Privacy Act. Further, "your resume states you have FOIA experience, but after beginning at OIG you indicated that you did not have experience with FOIA."

**RESPONSE**: Appellant hereby responds to Allegation No. 1 in the termination letter, incorporating the allegation by reference as if fully restated herein. Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

In September 2021, Appellant was given the opportunity to work for USAID under a Human Capital and Talent Management ("HCTM") program. Appellant was assigned to USAID's General Counsel/Ethics Administration (hereinafter "GC/EA") as a Program Specialist/Paralegal under the leadership of John "Jack" Ohlweiler, Designated Agency Ethics Official and Sara Ryan, Employment Deputy Assistant General Counsel. The Appellant worked with GC/EA remotely for two years from her residence in Cincinnati, Ohio. Appellant performed FOIA, MSPB, EEOC research and other related tasks for USAID's General Counsel and Ethics and Administration divisions and received above average and outstanding Performance Reviews related to same. (**See Exhibit A**). The HCTM program was for a period not to exceed two (2) years.

On or about May 19, 2023, Appellant applied for a Paralegal Specialist (FOIA) position with USAID-OIG on www.USAJOBS.gov. After applying for the position, Appellant contacted [redacted], [redacted] USAID and indicated that she had applied for the position with USAID-OIG and asked for any assistance [redacted] could provide with getting an interview would be much appreciated. [redacted] sent an email to [redacted] USAID-OIG, attaching Appellant's resume, along with Appellant's Schedule A documentation. (**See Exhibit B** hereto).

Shortly thereafter, Appellant received an email from [redacted], USAID-OIG's Investigations who indicated that USAID-OIG was

interested in interviewing Appellant for the Paralegal Specialist (FOIA) position. Appellant accepted the interview and on May 26, 2023, an interview was conducted with [redacted], Ashley Obando and another individual [unknown]. The interview went well; however, during the interview, Ashley Obando, Acting Assistant Inspector General for Management, Communications & Innovation, indicated that they were interviewing Appellant for an Executive Assistant position supporting the new Inspector General and not the Paralegal Specialist position. After the interview, Appellant sent a thank you email to both [redacted] and Ashley thanking them for the opportunity to interview and further indicated that she had applied for the Paralegal Specialist position and would be interested in interviewing if the position was still available. (**See Exhibit C** attached hereto).

After not receiving a response to her email, Appellant assumed that she did not get the Executive Assistant position, nor would she be considered for an interview for the Paralegal Specialist-FOIA position.

On August 23, 2024, Appellant received an email from [redacted] Human Resources Specialist, congratulating Appellant for being selected for the Paralegal Specialist-FOIA position with USAID-OIG, (pending a successful background check). At no time did Appellant interview for this position but Appellant was excited about the opportunity to work with USAID-OIG as a Paralegal Specialist (FOIA). (**See Exhibit D**).

On November 20, 2023, Appellant began NEO training and began the process of looking for residence in the Washington, D.C. area.

At no point did Appellant represent herself as a FOIA expert, nor does her résumé identify her as a FOIA specialist. Rather, her résumé explicitly states that Appellant "***conducted research related to the Freedom of Information Act (FOIA)***," a phrase that denotes analytical support and subject-matter inquiry; not formal FOIA processing, administration, or decision-making authority. This distinction is critical, as FOIA research does not equate to the responsibilities or qualifications required of a designated FOIA officer or specialist. (Emphasis added). (**See Resume of Appellant attached hereto as Exhibit B**).

**ALLEGATION NO. 2**

The termination letter indicates that "you have been provided with trainings (sic) and materials on FOIA, but you continue to lack the requisite knowledge of FOIA and do not meet the qualifications for the position".

**RESPONSE**: Appellant hereby responds to Allegation No. 2 in the termination letter, incorporating the allegation by reference as if fully restated herein.

Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

Appellant disputes the allegations contained in the termination letter and states that the only training she was given the opportunity to take was the online Department of Justice (DOJ) FOIA training and the training she did on her own on weekends related to FOIA. On or about March 18, 2024, Herrmann sent Appellant an email regarding DOJ FOIA training. The courses were online (one day a week for approximately three hours). (**<u>See</u> Exhibit E**). Appellant completed DOJ's online virtual FOIA training successfully and with thorough understanding of the FOIA process. Appellant learned later that Herrmann, manager, sent three (3) of Appellant's Caucasian colleagues from GC to a three-day (3) FOIA training in Minneapolis, Minnesota without Appellant's knowledge.

On or about May 1, 2024, Appellant ran into a gentleman from USAID-OIG's audits department, [redacted], who stated "Hi Deidre, I missed you at the FOIA training a few weeks back". Appellant stated to him, "what FOIA training"; [redacted] stated that he attended FOIA training in Minneapolis, Minnesota a few weeks back and he saw three of Appellant's colleagues from GC at the FOIA training, as well as Herrmann. Appellant replied that she didn't know anything about the training." (**<u>See</u> Exhibit F**).

Herrmann selectively sent Appellant's comparators to FOIA training while intentionally withholding the opportunity from Appellant; even though USAID-OIG had recently hired Appellant as a Paralegal Specialist (FOIA). This exclusion is particularly troubling given that FOIA training would have been directly relevant to Appellant's newly assigned duties. The deliberate omission not only undermined Appellant's ability to perform her role effectively but also reflects a pattern of disparate treatment and professional marginalization. Denying access to essential training in a "role-specific" area raises serious concerns regarding procedural fairness, equal opportunity, and potential retaliation.

**<u>ALLEGATION NO. 3</u>**

The termination letter states: "despite being provided with training and resources on FOIA, you continue to make mistakes requiring substantial oversight and continue to not grasp numerous basic aspects required of the position".

**<u>RESPONSE</u>**: Appellant hereby responds to Allegation No. 3 in the termination letter, incorporating the allegation by reference as if fully restated herein.

Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

Appellant unequivocally denies the assertion that she was unable to "grasp numerous basic" concepts. To the contrary, Appellant contends that Herrmann deliberately engaged in conduct designed to create the false impression that Appellant lacked the capacity to understand or perform the duties of her position.[1] This mischaracterization is not only unfounded but demonstrably false, as evidenced by the supporting documentation in Appellant's Responses to Allegations Nos. 4 and 5 below along with supporting exhibits submitted herewith.

**ALLEGATION NO. 4**

Herrmann's letter indicates "I have provided feedback on letters that you have prepared from templates; however, you continue to make the same errors and fail to use the templates as requested."

**RESPONSE**: Appellant hereby responds to Allegation No. 4 in the termination letter, incorporating the allegation by reference as if fully restated herein. Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

---

[1] Appellant respectfully submits that her professional record speaks for itself. At the age of sixteen, she began her legal career at one of Cincinnati's most esteemed law firms, where she remained for approximately ten years. After receiving extensive training and experience, Appellant was invited to assist one of the firm's first African American attorneys in launching his own solo criminal law practice; a collaboration that proved both successful and historic. Upon completion of that endeavor, Appellant was welcomed back to the prestigious firm, where she again served with distinction for another decade.

Her commitment to excellence continued at USAID, where Performance Evaluations from September 2021 through September 2023 consistently reflect her ability to execute duties with precision, professionalism, and integrity. (**See Exhibit A** attached hereto).

Against this backdrop of demonstrated competence, loyalty, and professionalism, the allegations advanced by Ms. Herrmann lack credibility. The record suggests that her criticisms are not grounded in fact but rather attempt to project her own work deficiencies. Appellant's documented performance and longstanding reputation for excellence stand in stark contrast to the unsupported claims levied against her.

On or about April 16, 2024, [redacted] (hereinafter [redacted]"), explicitly directed the Appellant to update FOIA form letters and place them in the designated FOIA files. The Appellant complied, revising the forms and copying both [redacted] and Herrmann. Yet on April 24, 2024, Herrmann responded to the Appellant's April 22, 2024, email, falsely asserting that [redacted] had only requested a logo change—from USAID to USAID-OIG, and had not asked for substantive updates. This claim is directly contradicted by [redacted] original email instruction. (**<u>See</u> Exhibit G attached hereto**).

This exchange occurred a little over three months into Appellant's tenure at USAID-OIG, yet Herrmann's tone was already marked by hostility and reflexive contradiction. Her response reflects a broader pattern of undermining the Appellant's work, regardless of merit or alignment with directives.

Further, on or about April 18, 2024, the Appellant received information from [redacted], indicating that a small claims court hearing was approaching and that USAID-OIG's General Counsel needed to respond accordingly. After reviewing the information, the Appellant accessed the court's website to retrieve relevant case documents and contacted the clerk's office to confirm the attorney of record—Adam Kaplan. The Appellant then emailed the USAID-OIG's General Counsel attorneys to share the case materials to ensure timely awareness.

Nicole Angarelli, General Counsel to the Inspector General, responded promptly and professionally: "Thank you, Deidre—we're on it!" In stark contrast, Herrmann removed the other attorneys from the thread and sent Appellant a reprimand for contacting the court without Herrmann's permission. Herrmann further claimed that "someone" found the information on a copier; yet, when asked, Herrmann failed to specify which copier. (**<u>See</u> Exhibit H**).

Herrmann's response arrived nearly a week after the Appellant's initial outreach; despite the time-sensitive nature of the matter and was marked by hostility rather than collaboration. The Appellant's actions were transparent, well-documented, and aligned with the agency's legal responsibilities. Herrmann's reaction reflects a broader pattern of obstruction and disproportionate scrutiny early in the Appellant's tenure.

Additionally, on July 30, 2024, Herrmann instructed the Appellant to log a new FOIA request. The Appellant promptly entered the request into USAID-OIG's database, prepared the associated files, and drafted

the initial acknowledgment letter, which was sent to both Herrmann and [redacted] for review.

The following day, Friday, July 31, 2024, Herrmann emailed the Appellant, claiming that Appellant had used the incorrect template and "attached what she described as the "correct" version. Upon review, the Appellant identified that the template Herrmann provided was the **exact** template that Appellant had used the day before. The Appellant informed Herrmann of this fact via email attaching both what Appellant had sent and prepared the day before and the identical form Herrmann attached and sent to Appellant as having been the incorrect form the following day. Herrmann did not respond. (**See Exhibit I**).

This was not a misunderstanding; it was a deliberate misrepresentation orchestrated to discredit the Appellant's work. Despite full compliance with instructions and timely execution of assigned tasks, Herrmann continued to manufacture false narratives where none existed. This incident reflects a broader pattern of intentional obstruction and reputational harm.

**ALLEGATION NO. 5**

Herrmann's letter indicates that "I asked you to research two FOIA issues, and in both memorandums, what you provided was largely a copy and paste from websites with no citation to that website and without any analysis by you."

**RESPONSE**: Appellant hereby responds to Allegation No. 5 in the termination letter, incorporating the allegation by reference as if fully restated herein. Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

Appellant affirms that she prepared and submitted FOIA research memorandums in direct response to Herrmann's requests, and did so in a timely, accurate, and professionally sound manner. Both memorandums reflected relevant case law, statutory interpretation, and legal analysis tailored to the questions posed. Contrary to Herrmann's allegation, the work product(s) were original, cited appropriately, and aligned with standard legal research practices.

**Appellant's First Research Memorandum**

Appellant unequivocally denies Herrmann's allegation that the FOIA memorandum submitted was "largely a copy and paste from websites with no citation" and "without any analysis." This claim is demonstrably false and contradicted by the memorandum itself, which contains cited

legal sources, structured reasoning, and original analysis. (**<u>See</u> Exhibit J**).

Exhibit J reflects a timely and thorough response to Herrmann's directive to research the intersection of FOIA and civil discovery. The memorandum includes citations to relevant case law; including *Miller v. U.S. Dep't of Agriculture, Baldrige v. Shapiro*, and *United States v. District Court* and discusses the legal distinctions between FOIA and discovery, including FOIA's role in supplementing discovery when traditional mechanisms are unavailable or incomplete. Herrmann's side comments to the research memorandum are inconsistent, performative, and in several instances, deliberately misleading. For example, Herrmann requested that the Appellant "apply the research to the complaint currently against USAID-OIG", while simultaneously refusing to provide the complaint itself. Herrmann also questioned the meaning of standard legal terms such as "supplementing discovery," despite their plain and widely accepted definitions.

These remarks do not reflect genuine confusion or constructive feedback. Rather, they exemplify a broader pattern of obstruction and reputational harm that began early in the Appellant's tenure. The memo stands on its own as a competent and well-reasoned legal analysis. Herrmann's commentary serves only to reinforce the retaliatory and dismissive tone that characterized her supervision.

Finally, the memorandum also outlines the scope of FOIA exemptions, including Exemption 7, and references DOJ's guidance and litigation manuals. These sources were cited appropriately, and the analysis was tailored to the research question posed. Herrmann's assertion that the memorandum lacked citation or analysis is not only inaccurate, but it also appears to be a deliberate misrepresentation.[2]

**<u>Appellant's Second Research Memorandum</u>**

Herrmann asked Appellant to perform research on the topic of "when does a material from outside the agency become a record" and asked that Appellant provide it to her by the end of the week. On Sunday, July 7, 2024, Appellant sent a draft of the memorandum to Herrmann and [redacted].

[2] It is worth noting that Herrmann's allegations appear to have been made under the assumption that the Appellant no longer retained a copy of the disputed memorandum. Had the Appellant not preserved her original work product; Herrmann's mischaracterization might have gone unchallenged. The existence of **Exhibit J** not only refutes the allegation(s) contained in the August 6, 2024, termination letter, but it underscores the importance of documentation in the face of **deliberate** misrepresentation. (***Emphasis added***).

On July 22, 2024, Herrmann sent Appellant an email asking for the research memorandum to which Appellant responded that she had provided the research memorandum to both Herrmann and [redacted] on July 7, 2024. Appellant re-sent the memorandum to them both.

Tuesday, July 30, 2024, the GC team had our regularly scheduled team meeting and our legal intern [redacted] (hereinafter "[redacted]"), stated that she was asked by Herrmann to do research related to "when does a material from outside the agency become a record". (Same research Herrmann had previously asked Appellant to do). Upon completion, [redacted] indicated that she had emailed her research to each staff member on the GC team. Upon completion of the meeting, Appellant stated to [redacted] that she hadn't received the research paper. [redacted] forwarded it to Appellant's email address. Appellant reviewed the research, and opined that [redacted] research memorandum was pretty much the same research Appellant prepared earlier for Herrmann and [redacted] review, same citations, etc. Attached hereto are both FOIA memorandums prepared by Appellant (with citations), directed to Herrmann and [redacted] along with [redacted] memorandum, respectively. (**<u>See</u> Exhibit K**).

Together, these memorandums reflect the Appellant's diligence, legal competence, and adherence to professional standards, despite repeated attempts by Herrmann to mischaracterize and undermine Appellant's. Furthermore, Appellant's Performance Reviews received from USAID, attached as Exhibit A hereto, dispel the notation that Appellant was incapable of performing meaningful and concise research.

**<u>ALLEGATION NO. 6</u>**:

The termination letter states: "your conduct has also been an issue while working for the OIG. I have received several complaints about your conduct towards and interactions with employees and contractors. You have engaged in behavior towards employees and contractors that has been inappropriate and confrontational to include verbal altercation with a fellow staff member that I later counseled you on."

**<u>RESPONSE</u>**: Appellant hereby responds to Allegation No. 6 in the termination letter, incorporating the allegation by reference as if fully restated herein. Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

At all times relevant to Appellant's tenure with USAID-OIG, Herrmann did not counsel Appellant regarding her conduct toward any employee or contractor. Appellant contends that the only

communication received from Herrmann on this topic was an email stating, "I was made aware of an altercation you had with [redacted]. In that email, Herrmann suggested that Appellant seek support through the agency's Employee Assistance Program (EAP). (**<u>See</u> Exhibit L**).

Prior to Appellant receiving Herrmann's email regarding the incident in question, Appellant was subsequently informed, on two separate occasions, that Herrmann had approached multiple IT staff members and requested written accounts of the interaction between Appellant and [redacted]. Prior to receiving Herrmann's email suggesting EAP counseling, Appellant proactively memorialized the events in question. On April 22, 2024, Appellant prepared an email to both Richard Ingram, Division Supervisor for the Application Team, and Ms. Adeyemi, memorializing the events as they transpired. (**<u>See</u> Exhibit M**).

Herrmann's claim that she "counseled" Appellant is inaccurate and unsupported by the record. The suggestion to seek services through the Employee Assistance Program (EAP) does not constitute formal counseling, nor was any disciplinary or corrective action communicated. The allegation of "several complaints" is vague, unsubstantiated, and appears to have been retroactively constructed to justify termination rather than reflect any documented pattern of misconduct. At no time did Herrmann ask Appellant what occurred or, as a manager, engage in any substantive discussion regarding the incident.

**<u>ALLEGATION NO. 7</u>**

The termination letter further indicates: "I received complaints about you potentially violating the Hatch Act, including advocating against a partial political candidate while at work. In addition, you were observed watching and/or listening to commentary advocating against a partisan political candidate during work hours."

**<u>RESPONSE</u>**: Appellant hereby responds to Allegation No. 7 in the termination letter, incorporating the allegation by reference as if fully restated herein. Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

On or about February 15, 2024, Herrmann sent Appellant a virtual meeting request. The virtual meeting was attended by Herrmann, [redacted], Human Resources and Appellant. Herrmann asked Appellant if she was familiar with the Hatch Act. Appellant stated to

Herrmann that she indeed was familiar with the Hatch Act. Herrmann further stated that someone told her that Appellant shared a picture with them about Donald Trump and further, that Appellant had been listening to a radio show where someone **called** into the station and said something derogatory about Donald Trump. Appellant indicated to both Herrmann and [redacted], that yes, "I did show J[redacted] a "funny" meme that was sent to Appellant on her phone. Specifically, the meme was sent around the time Donald Trump was found guilty of the assault on Jean Carroll. As a result, he was to be fined that day in the sexual abuse and defamation case styled *E. Jean Carroll v. Trump*. The meme was a picture of Trump's airplane with a boot on the wheel. (**<u>See</u> Exhibit N**). Appellant states that it was a simple "funny". Nevertheless, it was inappropriate. Appellant stated to both Herrmann and [redacted], "noted" and that it will not happen again.

As for the radio station, Appellant stated to Herrmann and [redacted], that she was listening to a radio talk show that aired from Appellant's hometown of Cincinnati, Ohio, (www.1230thebuzz.com). Appellant further stated that she had her headphones on the entire time but again stated that she would refrain from listening to same while at work. Appellant further stated that she did not have control over what people telephoned the radio station to talk about. "People telephone the station and talk about many subjects, sports, community events, education, politics, etc."

The content in question was not campaign-related, nor did it involve active political advocacy or the use of Appellant's official authority in any form. When the concern was raised, Appellant immediately acknowledged the issue, affirmed her awareness of the Hatch Act's restrictions, and agreed to refrain from similar activity; even though the content did not appear to meet the legal threshold for a Hatch Act violation. At no point did Appellant solicit political contributions, encourage political action in the workplace, or engage in partisan activity using government resources.

Although Appellant's termination occurred in August 2024, prior to the 2024 presidential transition, Herrmann repeatedly accused Appellant of discussing political topics, specifically referencing Donald Trump, and of listening to a radio station that allegedly aired derogatory commentary towards Trump. These accusations were baseless and speculative, as Appellant listened to the station privately through headphones. Herrmann's fixation on presumed political speech, coupled with her exclusionary conduct, suggests a retaliatory posture and a disregard for Appellant's professional boundaries and privacy.

> This isolated and unintentional action was addressed in good faith and without recurrence. Characterizing it as a Hatch Act breach is disproportionate and unsupported by evidence or policy interpretation.

The Hatch Act specifically states in part:

"May not engage in political activity while on duty, in the workplace, wearing a uniform or official insignia, or in a government vehicle."

https://osc.gov

The Hatch Act further states, "using official authority to interfere with an election result; soliciting, accepting or receiving political contributions; soliciting or discouraging political activity of persons before the employing agency; and running for public office in a partisan political election".

https://www.usda.gov

Appellant does not believe her actions meet the threshold of violating the Hatch Act but noted. (**See Exhibit O**).

Further, the termination letter in question attempts to infer that Appellant failed "to follow policy and procedure specifically as it relates to security of our office space."

> Appellant has photographic evidence demonstrating that access to the department is restricted by a secured door requiring a PIV card authorization prior to reaching the GC room. This physical barrier ensures that only authorized personnel can enter the area, rendering any suggestion of a security breach baseless.
>
> On the date in question, Appellant left her PIV card in her laptop on her desk to go to the ladies' room. Appellant placed cardboard in the GC room door solely to avoid being locked out. Upon return, Appellant herself was unable to re-enter and had to use the internal telephone to request access, further confirming that the security protocol remained intact. (**See Exhibit P attached hereto)**.
>
> The Agency's attempt to characterize this incident as a breach or misconduct is unfounded and appears to be part of a broader pattern of exaggerated allegations. The inclusion of this event in the Termination Letter reflects a "throw everything against the wall" approach, lacking both factual support and proportionality.

**<u>ALLEGATION NO. 8</u>**

The termination letter further states: "you have undermined the Office of General Counsel's (OGC) relationship with OIG's other internal business units and with external entities. I have asked you to reach out to me first before contacting external entities, and you have continued to not (sic) follow my instructions. On July 10, 2024, I learned you reached out to the Department of Justice's (DOJ) Office of Information and Privacy where you provided the DOJ with inaccurate information about OIG's FOIA process causing me to have to correct the inaccurate information you provided."

**<u>RESPONSE</u>**: Appellant hereby responds to Allegation No. 8 in the termination letter, incorporating the allegation by reference as if fully restated herein. Notwithstanding Appellant's response herein, Appellant respectfully reserves the right to supplement this response with additional documentation or evidence in support of this response later should circumstances warrant or further clarification become necessary.

During Appellant's FOIA training with the Department of Justice (DOJ), the instructor indicated that each agency was required to submit a quarterly report detailing FOIA requests received during the reporting period. The instructor stated that if any of the attendees had any questions regarding the quarterly report to contact her. The deadline for submission was July 26, 2024. (**<u>See</u> Exhibit Q** attached hereto). In preparation, Appellant emailed the DOJ training contact to inquire whether USAID-OIG was required to submit a separate FOIA report from USAID, and to clarify the reporting requirements.

The DOJ representative responded the same day, confirming USAID had already submitted its report and that USAID-OIG would need to submit a separate report due to USAID-OIG having a separate FOIA portal. Appellant copied Herrmann on the correspondence to ensure transparency and offered to draft USAID-OIG's FOIA report for Herrmann's review. Herrmann responded to both Appellant and the DOJ representative with: "I knew that; thank you [DOJ employee and Deidre]."[3]

Shortly thereafter, Herrmann removed the DOJ representative from the email thread and sent Appellant a separate message stating that Appellant had no authority to contact the DOJ on behalf of USAID-OIG. Appellant responded that she was simply attempting to be proactive considering the approaching deadline and had acted in good faith to ensure compliance.

---

[3] Appellant does not have this email exchange verifying same in her possession but believes a simple FOIA request or potential CISO hold of the DOJ's FOIA personnel email should locate and confirm these discussions.

In an attempt to support her statements relating to USAID and USAID-OIG being under the same umbrella with respect to FOIA, Herrmann then directed O'Hara to send Appellant USAID's Automated Directives System (ADS) on FOIA. The ADS was outdated and USAID-OIG's FY2023 Organizational Assessment announcement of December 1, 2023, superseded what O'Hara would send to Appellant. Further, after the FY23 Organizational Assessment was released, Nicole Angarella, as Acting Inspector General for USAID-OIG specifically stated during the annual meeting that USAID-OIG had recently brought FOIA practices in-house and FOIA was now separate from USAID's FOIA operations. (**See Exhibit R attached hereto**).

Additionally, a cursory internet search confirms that USAID and USAID-OIG maintain separate FOIA portals. (**See Exhibit S**). Appellant has also attached email correspondence and letters to FOIA requesters drafted by USAID's FOIA experts confirming closing their file and sending the FOIA request for further processing to USAID-OIG; explicitly acknowledging the separation relating to same. These facts directly contradict Herrmann's assertion that Appellant provided inaccurate information to DOJ. (**See Exhibit T**).

Herrmann's allegations are not only unsupported, but also demonstrably false. Appellant acted transparently, responsibly, and in accordance with the information provided by FOIA DOJ training that Herrmann requested that Appellant attend. Herrmann's response appears to be an attempt to retroactively frame Appellant's diligence as misconduct, despite having acknowledged the accuracy of the information at the time.

This incident exemplifies a broader pattern in which Appellant's diligence and transparency were repeatedly reframed as misconduct, while Herrmann's own misrepresentations went unchallenged by the Agency's EEO.

Taking collectively, these Responses and supporting Exhibits reflect a sustained pattern of diligence, transparency, and good-faith engagement; qualities Appellant consistently demonstrated throughout Appellant's tenure. Yet these efforts were repeatedly disregarded and undermined by Senior Managerial misconduct and retaliatory oversight.

Appellant relocated to the Washington, D.C. area with genuine enthusiasm for contributing to the mission and advancement of USAID-OIG. Instead, Appellant was met with unwarranted hostility, exclusion, and the systematic dismissal of her contributions by Herrmann and other members of Senior Management.

**WHEREFORE**, Appellant respectfully maintains that the allegations set forth in the Agency's August 6, 2024, Termination Letter are unsubstantiated, misleading, factually inaccurate, and/or mischaracterized. The responses herein, supported by contemporaneous documentation and contextual evidence, reflect a consistent pattern of diligence, transparency, and good-faith engagement. This stands in marked contrast to the conduct of Herrmann, Senior Management, whose misrepresentations, contradictory directives, and unsupported allegations have been repeatedly refuted by the record. Appellant respectfully requests that these responses be considered in their entirety as part of the appeal and any subsequent review of the termination decision.

Respectfully submitted,

***/s/Deidre Y. Kelly***
Deidre Y. Kelly, Appellant
[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing "Appellant's Responses to USAID-OIG's Termination Letter dated August 6, 2024" has been served on the following:

Equal Employment Opportunity Commission (via EEOC Portal)
Office of Federal Operations
131 M Street, NE
Washington, DC 20507
**Attention:** Reviewing Officer

Ismael Martinez, Director, Office of Civil Rights (via email: lmartinez@usaid.gov)
Director, Office of Civil Rights and Diversity
U.S. Agency for International Development
1300 Pennsylvania Avenue, NW
RRB, Room 5.08C
Washington, DC 20523

Adam Kaplan, Acting General Counsel and
Director of Congressional & Public Affairs (via email: adamkaplan@oig.usaid.gov and OIGLegAffairs@usaid.gov);
USAID Office of Inspector General
1300 Pennsylvania Avenue, NW
Washington, DC 20523

this 2nd day of October, 2025.

Respectfully submitted,

***/s/Deidre Y. Kelly***

Deidre Y. Kelly, Complainant
[redacted]

Cc: Kathleen Kaitlin, EEO Compliance Officer
USAID Office of Civil Rights (via email: kkillian@usaid.gov)